UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HAROLD M. SMITH, <br> # 200800014382, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | No. 3:18-cv-00061 <br> Judge Trauger |
| v. | ) <br> ) | |
| SHERIFF JEFF LONG, *et al.*, | ) <br> ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Harold M. Smith, an inmate of the Williamson County Jail in Franklin, Tennessee, brings this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Sheriff Jeff Long and f/n/u Vanden Bosch, alleging violations of the plaintiff's civil rights. (Docket No. 1).

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

As a preliminary matter, the court notes that the plaintiff has filed several letters and notices subsequent to the filing of his complaint. (Docket Nos. 5, 6, 8, 9, 10, 12, 13). The court will consider the information set forth in these letters and notices while screening the plaintiff's complaint. However, going forward, the plaintiff is advised that he cannot litigate this action by way of letters and notices to the court. Even though the plaintiff is proceeding pro se and the court will take into consideration his pro se status when evaluating pleadings and pending motions, the plaintiff still is required to comply with the rules governing this case. These rules exist to ensure fairness to all parties. If the plaintiff wishes for the court to consider arguments and evidence, he

1

must raise them by way of timely and properly filed motions.

## I. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings

drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. Section 1983 Standard

The plaintiff filed his complaint pursuant to 42 U.S.C. § 1983. (Docket No. 1 at 1). Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III. Alleged Facts

The complaint alleges that inmates housed at the Williamson County Jail in Franklin, Tennessee, are not given the opportunity to earn "2 for 1" credits; the food served to the inmates is unsanitary; inmates are not afforded their right to "free speech;" inmate workers are permitted to have "thermals" to keep warm but other inmates are not; county inmates are housed with state inmates; and guards are able to view inmates in the bathroom stall areas of "363, 364, segregation, the women, and 707 work detail," which violates the inmates' privacy. (Docket No. 1 at 5).

The plaintiff further alleges that inmates are not afforded daily outdoor recreation (Docket No. 6 at 1); the jail does not acknowledge Seventh Day Adventists or Muslims (*Id*. at 2); inmates must sign up in advance in order to attend a religious service (*Id.*); only three inmates per pod may attend a religious service (*Id.*); inmates are not screened for infections and diseases upon entering

the jail (*Id.*); the jail charges inmates for hygiene items, medical visits, and dentist visits (*Id.*); and the commissary overcharges inmates for items (*Id.*).

The plaintiff also alleges that guards open inmates' mail outside the presence of the inmates; guards search inmate cells when the inmates are not present; and inmates' clothes are insufficiently laundered. (Docket No. 5). Finally, the plaintiff alleges that inmates are not served meals with appropriate calories. (Docket No. 8).

## IV. PLRA Screening

The complaint names two defendants in their individual and official capacities: Sheriff Jeff Long and f/n/u Vanden Bosch. (Docket No. 1 at 2).

Other than listing Long and Bosch in the section of the complaint for "Defendant(s) against whom this lawsuit is being brought," the complaint does not mention either defendant. (Docket No. 1 at 2). The complaint does not identify any actions Long or Bosch allegedly took that might have given rise to the plaintiff's claims against them. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Because the plaintiff's

4

allegations fail to otherwise show how Long and Bosch were personally involved in the acts about which the plaintiff complains, the court must dismiss the § 1983 claims against Long and Bosch in their individual capacities for failure to state claims upon which relief can be granted.

With respect to the plaintiff's claims against Long and Bosch in their official capacities, the complaint identifies Long as the Sheriff of Williamson County and Bosch as a Lieutenant; from the context of the complaint, the court assumes for purposes of the PLRA screening that Bosch is employed by the Williamson County Sheriff's Office or the county entity responsible for the operation of the Williamson County Jail.[1] It is well-settled that an official capacity suit is nothing more than a suit against the governmental entity. *See, e.g., Leach v. Shelby Cnty.*, 891 F.2d 1241, 1245–46 (6th Cir. 1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself."); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself.") (citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.")).

While Williamson County is a suable entity, it is responsible under § 1983 only for its "own illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations and quotation marks omitted). Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of the county's official policy or

---

[1]It appears that this defendant's correct name is Lieutenant Daniel VandenBosch. *See* https://www.williamsoncounty-tn.gov/1520/Command-Staff. Herein, the court will refer to the defendant as the plaintiff does: f/n/u Vanden Bosch.

5

custom. *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir.2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)); *Regets v. City of Plymouth*, 568 Fed. Appx. 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against Williamson County under § 1983. Stated differently, the plaintiff's allegations are insufficient to demonstrate that the sheriff, acting in his official capacity, established a policy or custom which caused the plaintiff to be deprived of a constitutional right.

### A. Inmates must pay for medical and dental services

First, the plaintiff contends that Williamson County has a policy whereby inmates must pay for medical and dental services they receive while incarcerated. He does not claim that he received inadequate medical or dental care, or that the defendants were deliberately indifferent to his serious medical or dental needs. While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical or dental care free of cost. *See Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir.1997) (deliberate indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they

can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation); *see also Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir.1981) (no basis for due process claim where deductions from prisoner accounts were assessments for value received).

"It is only when medical care is denied to inmates because of their inability to pay that deliberate indifference is implicated," *Miller v. Blackwelder,* 2008 WL 2940534, at *6 (E.D. Tenn. July 24, 2008), and such is not the case before this court. The plaintiff does not allege that inmates are being deprived of medical care because they cannot pay. Neither does the plaintiff allege any denial of medical care to himself; thus, he has not alleged any harm to him as a result of the jail's policy. In short, the actions about which the plaintiff complains do not violate the Constitution. *See Miller,* 2008 WL 2940534, at *6 (rejecting inmate's Eighth Amendment claim based on jail's requirement that inmate submit a co-pay every time he receives medical services); *see also Coleman v. Whitney*, 2006 WL 3791316, at *2 (E.D. La. Dec. 21, 2006) ( "Programs that require inmates to bear part of their own medical costs remain within constitutional bounds so long as the program does not condition the providing of necessary medical services on an inmate's ability to pay.").

### B. Complaints about quality and quantity of inmate meals

With regard to the plaintiffs' claims about the caloric intake of inmates and the quality of food served, under the Eighth Amendment, state officials are only required to provide prisoners adequate food. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eighth Amendment also requires only that inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)(quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977))(footnotes omitted);

*see also Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996)(holding that to comply with the Constitution, inmates must receive "reasonably adequate" food). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Wilson*, 501 U.S. 294, 298. Depriving an inmate of food, or serving him contaminated food, establishes grounds for a violation of the Eighth Amendment. *Rhodes*, 452 U.S 337, 348.

Although the plaintiff alleges that the Williamson County Jail does not provide an appropriately caloric diet for inmates and that the plaintiff has been served food containing hairs (as a result of inmate food providers not being required to wear beard nets), the plaintiff does not identify a Williamson County policy with respect to inmate meals, nor does the plaintiff allege that he has suffered any harm as a result of such a policy or practice. For example, the plaintiff does not allege that he has lost significant weight while incarcerated or is suffering from any health problems as a result of the allegedly inadequate diet or the lack of food safety and sanitation. As such, the plaintiff's allegations fail to state an Eighth Amendment claim upon which relief can be granted.

    **C.**    **Inmates must purchase hygiene items**

Next, the plaintiff alleges that, as per Williamson County policy, inmates must purchase hygiene items such as toilet paper in the jail commissary. True, a prisoner may not be denied his basic needs, including hygiene. *Estelle*, 429 U.S. at 104. Yet, "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The court notes that the

plaintiff does not allege that he is unable to afford hygiene items such as toilet paper, nor does he allege that he has been harmed by his inability to maintain proper hygiene. For these reasons, the plaintiff's claim that the county's policy requiring inmates to pay for hygiene items violates his rights under the Eighth Amendment will be dismissed.

### D. Guards' viewing inmates in bathroom stalls

The plaintiff alleges that guards are able to view inmates in the bathroom stall areas of certain parts of the jail by way of video cameras, and this "voyeurism" violates the plaintiff's privacy. (Docket No. 1 at 5). Construed liberally, the plaintiff alleges that Williamson County policy permits constant video surveillance of inmates and that this policy violates inmates' Fourth Amendment rights to privacy.

Notably, the plaintiff does not allege that he, a male inmate, must expose his naked body to female guards while showering or performing bodily functions; had the plaintiff so alleged, he may have stated a colorable claim. *See Hunter v. Helton*, No. 1:10-cv-00021, 2010 WL 2405092, at *7 (M.D. Tenn. Jun. 10, 2010)(an inmate states a colorable claim if he alleges that guards of the opposite sex regularly viewed him nude while showering); *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004)(recognizing that "a prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked–for example while in the shower or using a toilet in a cell–would provide the basis of a claim on which relief could be granted"); *see also Sumpter-Bey v. Weatherford*, No. 3:10-cv-1021 (M.D. Tenn. Mar. 30, 2012)(considering whether the female guards "regularly and closely" viewed the male inmates while they showered and/or whether cross-gender monitoring of the showers at the Rutherford County Adult Detention Facility failed to serve legitimate penological security, staffing, and equal employment opportunity

interests). *But see Garrett v. Thaler*, 560 F. App'x 375, 380-81 (5th Cir. 2014)(affirming the district court's finding that "the placement of recording cameras in the restroom, shower, and dressing quarters in men's prisons" did not violate the prisoner-plaintiff's Fourth Amendment right to privacy because inmates have a minimal right to bodily privacy, any intrusion on an inmate's right to privacy is valid if it reasonably relates to legitimate penological interests, and "requiring only male guards to supervise inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff, or both, and there is no readily identifiable alternative that would impose only *de minimus* expenses in terms of inmate security, staffing costs, or equal employment opportunities."); *McNabb v. Long,* No. 3:18-cv-0067, 2018 WL 2318342, at *5-6 (M.D. Tenn. May 22, 2018)(finding the Fifth Circuit's reasoning in *Garrett* "compelling."). The court finds, based on the allegations of the complaint, that the plaintiff fails to state a Fourth Amendment privacy claim based on video surveillance of inmates at the Williamson County Jail.

### E. No daily outdoor recreation

The plaintiff alleges that Williamson County policy does not afford inmates daily outdoor recreation privileges. The amount of exercise that an prisoner is provided need only comport to the "'minimal civilized measure of life's necessities.'" *Walker v. Mintzes,* 771 F.2d 920, 927 (6th Cir. 1985) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *Jones v. Stine*, 843 F.Supp. 1186, 1193 (W.D. Mich. 1994) (citing *Walker*, 771 F.2d at 927–28 (6th Cir. 1985))(recognizing that the Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being). Therefore, a total denial of recreational opportunities may violate the Constitution. *See Walker,* 771 F.2d at 927-28; *McNabb*,

10

2018 WL 2318342, at *4 (finding that prisoner-plaintiff stated a colorable Eighth Amendment claim when he alleged that jail has a policy of denying inmates all outdoor recreation and exercise).

Although the Sixth Circuit has not defined a minimum standard for recreation for adult prisoners, in its opinion in *Rodgers v. Jabe*, 43 F.3d 1082, 1087-1088 (6th Cir. 1995), the Court strongly suggests that five hours a week is the constitutional minimum. Here, the complaint does not allege that the plaintiff is denied all recreation, only that the plaintiff is not afforded daily outdoor recreation. The court finds that a lack of daily outdoor recreation privileges is not sufficiently serious to constitute an actionable violation of § 1983. *See Sandin*, 515 U.S. at 486-87.

F. **Price of commissary items**

The plaintiff complains about the price of items in the jail commissary. As a general matter, there is no constitutional right of access to a jail or prison commissary. *See Wolfe v. Alexander,* No. 3:11-cv-0751, 2014 WL 4897733, at *8 (M.D. Tenn. Sept. 30, 2014)(citing *Newell v. Ruth*, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014)("[C]ommissary access is a privilege, not a right.")). Commissary pricing does not implicate constitutional concerns. *See e.g. Newell v. Ruth*, No. 1:11–cv–86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014) (neither the fee for the commissary account deposit nor commissary prices implicate an inmate's constitutional rights)*; Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir.1996) (concluding that "we know of no constitutional right of access to a prison . . . snack shop."); *Dowdy v. Albemarle Charlottesville Regional Jail*, 2011 WL 5075089 (W.D. Va. Oct.25, 2011) (complaint of price gouging including $1.00 for packet of Ramen Noodles failed to state a claim). Consequently, the plaintiff cannot state a claim for violation of his constitutional rights based on commissary pricing or fees.

G. **Lack of inmate health screenings upon arrival at the jail**

Although the complaint alleges that, as a matter of Williamson County policy and practice, incoming inmates are not subject to health screenings, and the plaintiff fears that he is being exposed to inmates with infections and diseases, the plaintiff has not claimed any injury or harm as a result of the alleged policy and practice. Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. *See Moore v. Merchant*, No. 5:13CV-P81-R, 2013 WL 6590395, at *4 (W.D. Ky. Dec. 16, 2013)(finding that, "[i]n any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"). Thus, any such claim fails as a matter of law.

### H.    Religious practice claims

The plaintiff makes three distinct, but related, claims based on his "freedom of religion." First, he alleges that, as a matter of policy or practice, the jail does not acknowledge Seventh Day Adventist or Muslim inmates' right to practice their religion. However, the plaintiff does not allege that he possesses a sincerely held belief in the Seventh Day Adventist or Muslim faith. Neither does the plaintiff allege that the county has denied him the ability to exercise his Seventh Day Adventist, Muslim, or any faith while incarcerated at the Williamson County Jail. *See Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987) (holding that to establish that his right to freely practice his religion has been violated, a prisoner must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) defendants' behavior infringes upon this practice or belief).

Next, the plaintiff alleges that inmates must sign up in advance in order to attend religious

12

services and that only three inmates from a pod may attend a religious service. It is settled that prisoners have a First Amendment right to practice their religious beliefs, *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984), and prisoners must be provided "reasonable opportunities" to practice their religion. Id. Therefore, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations which are reasonably related to legitimate penological interests. *Bell v. Wolfish*, 441 U.S. 520, 549-51, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)(limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate the First Amendment rights of inmates); *Pollack v. Marshall*, 845 F.2d 656, 658-60 (6th Cir.1988) (plaintiff who challenged regulation limiting the length of prisoners' hair did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation failed to state a constitutional violation).

The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs, nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate; the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 104 L.Ed.2d 459 (1989).

Here, the plaintiff does not allege that he is unable to attend religious services at all. He simply does not like having to sign up in advance or the jail's limitation on how many inmates from

the same pod are permitted to attend a religious service. In the court's opinion, these restrictions, even if they are the policy of Williamson County, appear to be reasonably related to the legitimate penological interests of safety of inmates and security of the facility. Furthermore, the plaintiff does not allege that these restrictions inhibit his ability to exercise his religion. Based on these allegations, the court finds that the plaintiff fails to state a First Amendment claim upon which relief can be granted.

> I. **Interference with incoming and outgoing inmate mail**

Inmates have a First Amendment right to communicate with the outside world by sending and receiving mail. *Thornburg v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner v. Safely*, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). That right, however, is not absolute; it is limited by concerns for institutional security and public safety. Thus, prisons and jails may impinge upon an inmate's First Amendment right to send or receive mail so long as their policies are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. With regard to outgoing mail, such concerns include, but are "not limited to, escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh*, 490 U.S. at 412.

In light of these legitimate concerns, it is well established that prison officials do not commit a constitutional violation by opening, inspecting, and even copying prisoners' non-privileged outgoing mail. *Gassier v. Wood*, 14 F.3d 406, 408 (8th Cir.1994) (citing, among others, *Stow v. Grimaldi*, 993 F.2d 1002, 1004–05 (1st Cir.1993) (holding that a New Hampshire State Prison practice of requiring nonprivileged outgoing mail to be submitted for inspection in unsealed envelopes does not violate prisoners' constitutional rights); *United States v. Whalen*, 940 F.2d 1027,

1035 (7th Cir.1991) (holding that "it is well established that prisons have sound reasons for reading the outgoing mail of their inmates")). *See also Busby v. Dretke*, 359 F.3d 708, 721 (5th Cir. 2004) ("Given that jail officials could legitimately read Busby's mail, we do not think that the First Amendment would bar them from turning letters over to the prosecutors if the jailers happened to find valuable evidence during their routine monitoring."); *Houston v. Hornick*, No. 2:08–cv–92, 2008 WL 2699384, *1–2 (W.D. Mich. June 30, 2008) (adopting report and recommendation dismissing complaint for failure to state a constitutional claim where prison official read prisoner's letter to psychiatrist and gave it to police, which resulted in prisoner's bond revocation and placement in segregation).

In this case, the plaintiff appears to complain only that his incoming mail was opened outside of his presence. He does not state what happened after his mail was opened and read by jail officials. The plaintiff does not allege the existence of a specific policy regarding the opening of inmate mail, and he does not indicate what concerns jail officials believed to have been implicated by the plaintiff's mail. He also does not state that he has experienced issues with outgoing mail, or in particular legal mail or mail otherwise subject to privilege. Because jail officials did not violate the plaintiffs constitutional rights by opening and inspecting his non-privileged incoming mail, the court finds that the allegations in his complaint fail to state a claim for which relief may be granted.

**J.     Complaints about laundry**

The plaintiff alleges that inmate "laundry is just thrown into the washer, no detergent, no bleach, no anything and this is very unsanitary . . . . [I]t is just dirt on dirt.  These clothes don't even smell like they've been cleaned."  (Docket No. 5 at 1).  Construing these allegations liberally, the plaintiff alleges that Williamson County maintains unsanitary laundry practices at the jail.  However,

15

the Constitution does not protect a prisoner from unpleasant prison experiences. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2400, 69 L.Ed.2d 59 (1981). The plaintiff does not allege that he has contracted any illness or disease based on the alleged unsanitary laundry practices of the jail. As such, this claim must be dismissed for failure to state a claim upon which relief can be granted.

### K. Search of inmate cells

The plaintiff complains that the guards search inmate cells without the inmates being present. To the extent that the plaintiff claims that a county policy permitting the search of inmate cells violates his constitutional rights, he is mistaken. A convicted inmate does not enjoy a right to privacy in his cell, and prison authorities do not violate any protected constitutional right by conducting searches and inspections. *Hudson v. Palmer*, 468 U.S. 517, 525–26, 104 S.Ct. 3194, 3199–3200, 82 L.Ed.2d 393 (1984); *Bell v. Wolfish*, 441 U.S. 520, 555–56, 99 S.Ct. 1861, 1882–83, 60 L.Ed.2d 447 (1979); *Anderson v. Sundquist*, 1 F. Supp.2d 828, 832 (W.D. Tenn. 1998). Thus, the plaintiff fails to state a Fourth Amendment privacy claim upon which relief can be granted.

### L. Free speech claims

The plaintiff complains that inmates are not permitted to speak their mind while incarcerated at the Williamson County Jail. According to him, the county is denying his right to free speech because he is not allowed "to voice [his] opinion" without being placed in segregation. (Docket No. 6 at 2). The right to free speech is limited for prisoners. *See e.g., Wooley v. Maynard*, 430 U.S. 705, 714, 97 S. Ct. 1248, 51 L. Ed.2d 752 (1977); *Howard v. Purkey*, No., 2:06-CV-141, 2008 WL 351208, at *1 (E.D. Tenn. Feb. 6, 2008). "The right of free speech does not encompass the right to

cause disruption . . . ." *McGlone v. Metro. Gov't of Nashville*, 272 F. Supp.3d 1030, 1041 (M.D. Tenn. 2017). Jail officials have a legitimate penological interest in maintaining order and discipline in the inmate population. A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to segregation, the loss of privileges, fines, and restitution do not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986). *See Upshaw v. Jones*, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015)(finding no violation of inmate's due process rights when corrections officer assigned inmate to segregation as punishment prior to inmate's disciplinary hearing). The plaintiff's allegations about his inability to speak his mind do not rise to the level of constitutional violations.

**M.     Miscellaneous claims**

The plaintiff alleges that county policies or practices permit county inmates to be housed with state inmates, permit only inmates with jobs to possess "thermals" to stay warm, and deny the plaintiff to opportunity to earn the "2 for 1" credits to which he believes he is entitled. First, inmates have no constitutional right to be confined in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)(superseded by statute on other grounds); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Second, a prisoner does not have a constitutional right to a particular job, or to any job at all for that matter. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Bishop v. Wood*, 426 U.S. 341 (1976); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Rather, prison administrators may assign inmates jobs and wages at their discretion.

17

*Miller v. Campbell*, 108 F. Supp.2d 960, 967 (W.D. Tenn. 2000).

Third, Tennessee law and regulations do not create a right to earn sentence credits. *See Tenn. Code Ann*. § 41-21-236(a)(2)(2014). Thus, there is no right to due process in connection with segregation, transfer, or classification decisions that have such an uncertain effect on a particular inmate's release. *See Frazier v. Hesson*, 40 F. Supp.2d 957, 964, 966 (W.D. Tenn. 1999)(explaining that *Heck* and *Balisok* "reinforce the Court's conclusion that neither confinement to segregation, transfers, nor increased security classifications constitute custody because they do not directly lengthen the duration of confinement" and, further, "In Tennessee . . . the effect of sentence credits is only to affect a release eligibility date, which is nothing more than a unilateral expectancy. It is thus devoid of due process protections.").

Were the plaintiff challenging the **loss** of accrued sentence credits, the court's analysis would be different under *Sandin v. Conner*, 515 U.S. 472, 484-87 (1995). However, "'the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.' *Wolff v. McDonnell*, 481 U.S. 539, 557 (1974), despite the undoubted impact of such credits on the freedom of inmates." *Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983). Thus, because the plaintiff has been and is being deprived of the **opportunity** to earn "2 for 1" credits, not to sentence credits he already earned, his constitutional due process rights are not being violated.

**V.     Conclusion**

Having screened the complaint pursuant to the PLRA, the court finds that the complaint fails to state claims under § 1983 upon which relief can be granted as to any defendant. Accordingly, the complaint will be dismissed.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge